David BARRY, Appellant,

v.

STATE of Alaska, Appellee.

No. A–5860.

Court of Appeals of Alaska.

Oct. 17, 1996.

Thomas G. Nave, Juneau, for Appellant.

Thomas E. Wagner, Assistant District Attorney, Richard A. Svobodny, District Attorney, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

*OPINION*

MANNHEIMER, Judge.

David Barry was convicted of criminally negligent homicide, AS 11.41.130(a), for a homicide committed while he was driving drunk. Barry was sentenced to 5 years' imprisonment with 3 years, 3 months suspended. As one of Barry's conditions of probation, Superior Court Judge Larry R. Weeks prohibited Barry from possessing any firearm. Barry now challenges this condition of probation. We affirm the superior court's decision.

Barry brings a two-pronged attack against Judge Weeks's decision to forbid him from possessing firearms. First, Barry argues that Judge Weeks's action was based on a misunderstanding of federal law. Judge Weeks imposed the probation condition under the assumption that federal law prohibits all convicted felons from possessing firearms of any type.[1] Barry asserts that Judge Weeks was mistaken—that federal law does not in fact prohibit Barry from possessing firearms. The second part of Barry's argument depends upon the first: assuming that federal law does not prohibit Barry from possessing firearms, Barry argues that the circumstances of his case do not support the superior court's decision to bar him from possessing firearms. *See Roman v. State,* 570 P.2d 1235, 1240 (Alaska 1977) (conditions of probation "must be reasonably related to the rehabilitation of the offender and the protection of the public", and they "must not be unduly restrictive of [the probationer's] liberty").

■ The first part of Barry's argument is wrong: federal law does in fact prohibit him from possessing firearms. The federal statute at issue is 18 U.S.C. § 922. Under subsection (g)(1) of this statute, it is unlawful for any person

who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year

. . .

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Barry admits that any firearm and ammunition he might possess would have come to Alaska through interstate or foreign commerce. However, Barry relies on *Tot v. United States,* 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943), and *United States v. Bass,* 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), for the proposition that 18 U.S.C. § 922(g) was not intended to punish felons' possession of firearms *per se,* but only to punish a felon's act of shipping, transporting, or receiving firearms in a commercial context (that is, while the felon was participating in commerce). Barry particularly relies on the following passage from *Bass:*

[18 U.S.C. § 922(g) ] apparently does not reach possessions . . . at all, even those with an interstate commerce nexus, but is limited to the sending or receiving of firearms as part of interstate transportation.

404 U.S. at 342–43, 92 S.Ct. at 520 (footnote omitted).

Barry's argument has two flaws. First, even though the *Bass* Court indicated that the 1968 version of 18 U.S.C. § 922(g) did not prohibit a felon from possessing a firearm that had been transported in interstate commerce, the Court at the same time held that another federal statute, 18 U.S.C. app. § 1202(a) (1970) (repealed 1986), *did* prohibit felons from possessing such weapons.[2]

The *Bass* Court interpreted Section 1202(a) as prohibiting a felon's possession or

---

1. In contrast, Alaska's prohibition on firearm possession by convicted felons extends only to concealable firearms. AS 11.61.200(a)(1).

2. 18 U.S.C. app. § 1202(a), a portion of the 1968 Omnibus Crime Control and Safe Streets Act, declared:

Any person who . . . has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony . . . and who receives, possesses, or transports in commerce or affecting commerce . . . any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both. (quoted in *Bass,* 404 U.S. at 337, 92 S.Ct. at 517.)

receipt of any firearm "in commerce or affecting commerce". 404 U.S. at 346 n. 14, 92 S.Ct. at 522 n. 14. The Court then added a "final word"

> about the nexus with interstate commerce that must be shown in individual cases [under 18 U.S.C. app. § 1202(a) ].... [A] person "possesses [a firearm] in commerce or affecting commerce" if at the time of the offense the gun was moving interstate ... or if the possession affects commerce. *Significantly broader in reach, however, is the offense of "receiv[ing] [a firearm] in commerce or affecting commerce", for we conclude that the Government [proves this element] if it demonstrates that the firearm received has previously traveled in interstate commerce.*

*Bass,* 404 U.S. at 350, 92 S.Ct. at 524 (emphasis added) (footnote omitted).

The second flaw in Barry's argument is that 18 U.S.C. § 922 has been substantially amended since 1971 (when *Bass* was decided). The statute, quoted above, now specifically forbids a felon from "receiv[ing] any firearm or ammunition which has been shipped or transported in interstate or foreign commerce". We also note that a related subsection of the same statute, 18 U.S.C. § 922(d)(1), makes it unlawful for any person "to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person ... has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year".

The current statute manifests a clear Congressional intent to prevent felons from taking possession of either a firearm or ammunition that has moved through interstate commerce. *See Ball v. United States,* 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985), where the Supreme Court held that a convicted felon who stole a handgun from a friend's car could be convicted of violating 18 U.S.C. § 922 (the government having proved that the handgun was previously shipped in interstate commerce).

■ As an alternative argument, Barry asserts that felony probationers in Alaska are not subject to the restrictions of 18 U.S.C. § 922 because, upon their release from actual incarceration, probationers are considered to have their civil rights restored to them. Under 18 U.S.C. § 921(a)(20), "[a]ny conviction which has been expunged, or set aside[,] or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter".

■ However, under Alaska law, defendants on probation or parole can not serve as jurors. *See Singleton v. State,* 921 P.2d 636 (Alaska App.1996)[3] This disqualification means that, for purposes of federal firearms laws, Barry's civil rights have not been restored.

In *United States v. Andaverde,* 64 F.3d 1305 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1055, 134 L.Ed.2d 199 (1996), the Ninth Circuit rejected an argument similar to Barry's and held that a felon could be convicted under 18 U.S.C. § 922(g) for possessing a shotgun even though state law allowed him to possess this weapon:

> Andaverde first argues that, because Washington state law did not prohibit him from possessing a shotgun, he should be considered as having had his civil rights restored. Therefore, Andaverde contends, his conviction is not a conviction for § 922(g)(1)'s purposes.
>
> Andaverde is incorrect. In determining whether a felon continues to suffer a civil rights disability, the Ninth Circuit considers whether the felon has been restored the right to vote, sit on a jury, and hold public office. *United States v. Meeks,* 987

**3.** Some felons are also disqualified from voting. Under AS 15.05.030(a) and AS 33.30.241(a), a person convicted of a felony "involving moral turpitude" is disqualified from voting until his or her unconditional discharge. As defined in AS 15.60.010(8),

> "felony involving moral turpitude" includes those crimes which are immoral or wrong in

themselves such as murder, sexual assault, robbery, kidnapping, incest, arson, burglary, theft, and forgery.

Barry was convicted of criminally negligent homicide. The State does not argue that Barry's crime is a "felony involving moral turpitude" under AS 15.60.010(8). We therefore do not reach this issue.

258

F.2d 575, 578 (9th Cir.), *cert. denied,* 510 U.S. 919, 114 S.Ct. 314, 126 L.Ed.2d 261 (1993); *United States v. Dahms,* 938 F.2d 131, 133 (9th Cir.1991). Andaverde contends that this restoration analysis should turn on whether state law restores the right to bear arms. Even if, in determining whether a felon's civil rights have been restored, the court should look to state law giving felons the right to bear arms, the restoration of this single right does not prevent prosecution under § 922(g)(1). A restoration of rights must be "substantial," not merely de minimis. *Meeks,* 987 F.2d at 578; *Dahms,* 938 F.2d at 133. We held in *Meeks* that, under Missouri law which allowed convicted felons to vote and hold office, but which did not restore the right to serve on a jury, to hold office as a sheriff, or to be a highway patrol officer, the defendant had not had his civil rights "substantially restored" and thus could be prosecuted under § 922(g)(1). *Meeks,* 987 F.2d at 578. In contrast, the *Dahms* court ruled that a defendant who had been restored the right to vote, hold public office, and serve on a jury had had his rights substantially restored within the meaning of § 921(a)(20). *Dahms,* 938 F.2d at 134.

Under Washington state law, a felon's civil rights are restored in full when he completes the requirements of his sentence and is thereby discharged. Wash.Rev. Code § 9.94A.220. However, until a felon is discharged, state law prevents him from serving on a jury, holding public office, and voting. Wash.Rev.Code §§ 2.36.070(5) (Supp.1995), 29.65.010(3); Wash. Const. Art. 6, § 3. There is no evidence in the record that Andaverde has been discharged. Andaverde thus substantially lacked civil rights when he was prosecuted under § 922(g)(1). *Cf. Dahms,* 938 F.2d at 134. Therefore, the district court did not err in ruling that he could be prosecuted under that statute.

*Andaverde,* 64 F.3d at 1309–1310 (footnotes omitted). Under the authority of *United States v. Andaverde* and *United States v. Meeks* (discussed in the quoted portion of *Andaverde*), we hold that Barry's civil rights were not restored for purposes of the federal firearms laws when Barry was released on probation.

Thus, federal law forbids Barry from possessing any firearm or ammunition that has moved through interstate commerce. Even if the superior court had not imposed a special condition of probation addressed to firearms, Barry would still be prohibited from possessing a firearm under the normal condition of probation requiring him to obey all federal laws. The special condition of probation that Barry attacks is essentially redundant.

■ Moreover, even if federal law did not forbid Barry from possessing firearms, the record supports the superior court's decision to impose the challenged condition of probation. Barry was convicted of killing another person while driving drunk—that is, Barry became intoxicated and demonstrated criminal negligence with regard to the risk that his conduct might kill someone. When a defendant is convicted of such a crime, a sentencing court's decision to prohibit the defendant from possessing firearms during the period of his or her probation is, almost by definition, "reasonably related to the protection of the public". *Roman,* 570 P.2d at 1240.

The judgement of the superior court is AFFIRMED.