**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

ANDREW FRANKLIN KOWALCZYK,
*Defendant-Appellant*.

Nos. 14-30198
14-30219

D.C. No.
3:08-cr-00095-
MO-1

OPINION

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, District Judge, Presiding

Argued and Submitted
July 6, 2015—Portland, Oregon

Filed November 4, 2015

Before: Harry Pregerson, N. Randy Smith, and
John B. Owens, Circuit Judges.

Opinion by Judge Pregerson

## SUMMARY[*]

### Criminal Law

The panel affirmed the district court's order finding a defendant incompetent to stand trial and referring him to a federal medical center for further evaluation, and remanded.

The panel held that 18 U.S.C. § 4247 creates a non-waivable right to counsel during competency proceedings, and that the defendant was entitled to be represented by an attorney at his competency hearing. The panel held that the "meaningful adversarial testing" standard applies to assessing whether amicus counsel, appointed by the district court, satisfied the requirement of the right to counsel, and concluded that the defendant's amicus counsel did provide meaningful adversarial testing.

The panel rejected the defendant's claim that he was denied his constitutional right to testify in his competency hearings, and held that any potential abuse of discretion in not allowing the defendant to speak at a hearing on supplemental briefing was harmless.

The panel held that because multiple competency evaluations and determinations are permitted by 18 U.S.C. § 4241, the panel did not commit process error when, after finding the defendant incompetent for the first time and referring him for treatment, the district court held a second

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

competency hearing and ordered him committed and treated a second time.

The panel saw no reason to reassign the case to a different district court judge on remand.

## COUNSEL

Stephen R. Sady (argued), Chief Deputy, Federal Public Defender, Portland, Oregon, for Defendant-Appellant.

Gary Y. Sussman (argued), Assistant United States Attorney, Kelly A. Zusman, Appellate Chief, S. Amanda Marshall, United States Attorney, United States Attorney's Office, Portland, Oregon, for Plaintiff-Appellee.

## OPINION

PREGERSON, Circuit Judge:

During the long running course of Andrew Kowalczyk's prosecution for production of child pornography the district court conducted two separate competency hearings to determine whether Kowalczyk was competent to stand trial. During the second competency hearing, the district court appointed amicus counsel. After both competency hearings the district court found Kowalczyk incompetent to stand trial and referred Kowalczyk to a federal medical center for further evaluation. Kowalczyk appeals the second commitment order. Kowalczyk argues that the second competency hearing violated his constitutional rights because it: (1) deprived him of his Sixth Amendment right to counsel;

(2) deprived him of his right to testify; and (3) deprived him of the procedural protections outlined under 18 U.S.C. § 4241 for finding an individual incompetent. We affirm the district court's commitment order and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 21, 2008, a federal grand jury in the District of Oregon returned a one count indictment charging Kowalczyk with production of child pornography in violation of 18 U.S.C. § 2251(a) and (e). On March 20, 2012 the grand jury returned a superseding indictment charging Kowalczyk with eight additional counts of producing child pornography.

On February 22, 2008, Kowalczyk's case was assigned to District Judge Garr M. King. Kowalczyk first appeared in court on August 20, 2009, and pleaded not guilty. Federal Public Defenders Francesca Freccero and Ellen Pitcher were appointed to represent Kowalczyk.

On December 2, 2009, Freccero and Pitcher moved to withdraw as Kowalczyk's attorneys because of a conflict with Kowalczyk. The district court granted the motion to withdraw and appointed Matthew Schindler to represent Kowalczyk. Priscilla Seaborg was subsequently appointed as co-counsel. Schindler and Seaborg moved to withdraw ten months later on October 15, 2010. The district court warned Kowalczyk that if his actions caused another attorney to resign he would have to represent himself. On October 22, 2010, the district court granted Schindler's and Seaborg's motion to withdraw and appointed Michael Levine and Matthew McHenry to represent Kowalczyk.

Soon after, Levine and McHenry filed a motion to withdraw, explaining that a "mutual loss of trust ha[d] led to an irreconcilable breakdown in the attorney–client relationship." Kowalczyk stated that he did not wish to represent himself, and the district court denied the attorneys' motion to withdraw. On May 5, 2011, Levine and McHenry filed a second motion to withdraw, explaining that the "attorney–client relationship [was] shattered and irreparably broken." The district court granted Levine and McHenry's motion to withdraw, and appointed the seventh attorney, Noel Grefenson, to represent Kowalczyk.

On June 1, 2012, Kowalczyk filed a pro se motion objecting to Grefenson's representation and requesting new or additional counsel. The district court denied the motion.

On October 29, 2012, defense counsel Grefenson filed an ex parte motion requesting funds for a psychological evaluation of Kowalczyk. Grefenson explained that Kowalczyk insisted that he receive a competency evaluation, though Grefenson, admitting he was not a mental health professional, did not believe his client was incompetent. The district court denied the request, finding that there was no indication "Kowalczyk was mentally unstable to the point where he could not understand the proceedings or consult with his lawyer."

The district court noted that this was not the first time Kowalczyk requested medical attention shortly before trial was scheduled to begin. On August 10, 2012, less than a month before a scheduled trial date, Kowalczyk complained of a hernia and said he needed surgery. A doctor determined surgery was not necessary and that the symptoms were likely due to obesity.

In November 2012, Kowalczyk's father hired a clinical and forensic psychologist, Dr. Donald True, to evaluate Kowalczyk. Dr. True concluded Kowalczyk was not presently competent to stand trial and was unable to work with attorneys due to irrational paranoia.

On November 16, 2012, the district court held an ex parte hearing to address Kowalczyk's continued requests for a new attorney. Grefenson informed the court that Kowalczyk had filed a lawsuit against him. Kowalczyk maintained that he wanted to be represented by an attorney.

The district court summarized the procedural history of the case and opined that it appeared as if Kowalczyk was looking for ways "to avoid going to trial." Because of the conflict of interest created by the lawsuit Kowalczyk filed against Grefenson, the district court decided to appoint new counsel. But the court warned Kowalczyk that this was the final lawyer that would be appointed and if Kowalczyk did "anything that causes the lawyer to have to resign, . . . [the court would] assume [he was] doing it in order to avoid going to trial and [would] assume that [he had] waived [his] right to counsel." Kowalczyk then submitted Dr. True's report to the court. During the November 16, 2012 hearing, Judge King transferred the case to Judge Mosman because Judge King was scheduled to undergo surgery.

On November 30, 2012, Judge Mosman appointed Mark Cross, the eighth attorney to represent Kowalczyk. The district court again reminded Kowalczyk that Cross was his "last lawyer" and that it would "deem [Kowalczyk] to be representing [himself]" if "anything [got] in the way of the continued representation."

On March 11, 2013, the government moved for a competency hearing, a psychological evaluation, and discovery of prior psychological reports. The district court granted the government's motion and ordered Kowalczyk to undergo psychological evaluation in preparation for the competency hearing and asked that a report be prepared pursuant to 18 U.S.C. § 4247.[1]

In May 20, 2013, Kowalczyk, acting pro se, moved for substitution of counsel. He complained that, among other things, Cross had not spent much more than an hour of face-

---

[1] Psychiatric or psychological reports.— A psychiatric or psychological report ordered pursuant to this chapter shall be prepared by the examiner designated to conduct the psychiatric or psychological examination, shall be filed with the court with copies provided to the counsel for the person examined and to the attorney for the Government, and shall include—

(1) the person's history and present symptoms;

(2) a description of the psychiatric, psychological, and medical tests that were employed and their results;

(3) the examiner's findings; and

(4) the examiner's opinions as to diagnosis, prognosis, and—

(A) if the examination is ordered under section 4241, whether the person is suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

18 U.S.C. § 4247(c).

time with him. Cross moved to withdraw as counsel that same day.

On May 29, 2013, the district court held a status conference to discuss both motions. The court summarized the case's drawn out procedural history, including references to the eight court-appointed attorneys whose representation was withdrawn, with the court's consent, because of serious conflicts that arose with their client Kowalczyk. The court asked Cross whether he believed Kowalczyk was "mentally competent to proceed with pro se representation." Cross responded, "I don't believe in good faith that I can represent in my opinion that he is not competent." The court then stated:

> I'm inclined to find that the defendant has been acting in a manner that's dilatory and hinders the efficient administration of justice; that as Judge King said . . . that the defendant's conduct seems calculated to prevent the trial from happening now five and a half years later and eight attorneys later, and that therefore he should be deemed to have waived his right to counsel and proceed pro se.

The district court granted Cross's motion to withdraw and stated that Kowalczyk's motion for substitute counsel would be resolved on the date set for the competency proceeding: June 10, 2013. The court also had government counsel remind Kowalczyk of the elements of the charged offense and the potential punishment. The court found Kowalczyk "competent to represent himself though the competency hearing," finding "that defendant has a rational as well as

factual understanding of the proceedings against him and that he has the mental capacity to conduct basic defense and trial tasks as well as other pro se defendants."

### *Self-Representation and First Competency Hearing*

On June 6, 2013, Kowalczyk filed an emergency petition for writ of mandamus with our court, challenging the district court's authority to require him to represent himself at his own competency hearing. Our court denied the emergency petition on the ground that any harm would be "correctable on appeal."

On June 10, 2013, the district court held the first hearing during these proceedings to address Kowalczyk's competency. The district court denied Kowalczyk's motions for substitute or standby counsel, consistent with its earlier finding that Kowalczyk was "competent to represent himself through the competency hearing."

Government psychologist Dr. Eric Johnson submitted his report to the court. The report stated that there were "findings both in support of and not in support of incompetency." Dr. Johnson recommended a finding of incompetence and referral to a facility where Kowalczyk can be "closely observed, treated, and evaluated." Defense psychologist Dr. True determined, based on his own assessment, that Kowalczyk was not competent to stand trial.

The district court was concerned that Kowalczyk was malingering, but in light of the defendant's and government's psychological reports, the district court found Kowalczyk incompetent to stand trial. The district court ordered Kowalczyk committed to the custody of the Attorney General

under 18 U.S.C. §§ 4241(d) and 4247(d). Kowalczyk was transferred to the United States Medical Center for Federal Prisoners in Springfield, Missouri ("FMC Springfield") pursuant to the court's order.

Bureau of Prisons forensic psychologist Dr. Richart DeMier evaluated Kowalczyk during his commitment at FMC Springfield from July 2013 until October 2013.

### *Return from FMC Springfield and Second Competency Hearing*

Dr. DeMier determined that Kowalczyk was competent to proceed with the case, finding "no mental illness which would preclude [defendant's] ability to understand the nature of the proceedings against him or to assist properly in his defense." Kowalczyk returned to the district court for further proceedings.

On October 9, 2013, the district court set further competency proceedings for November 26, 2013. Before the hearing, the government moved the district court to appoint counsel to represent Kowalczyk at the competency hearing. The court granted the government's motion, appointed Todd Bofferding as Kowalczyk's legal counsel, and rescheduled the competency hearing for January 9, 2014. On January 7, 2014, Bofferding and Kowalczyk filed a joint motion to withdraw, citing concerns that Kowalczyk would soon file a lawsuit and state bar complaint against him.

On January 9, 2014, the district court found that Kowalczyk had "waived by action his right to be fully represented at the competency hearing." The court granted Bofferding's motion to withdraw. The court decided to

appoint amicus counsel, finding that "the law technically requires representation at a competency hearing." When Kowalczyk asked the court to explain the role of amicus counsel, the court provided the following:

> [An attorney appointed by the court] to do his best to present any views opposing the Government's views in court. He won't be representing you. So you won't be able to fire him, but he will be doing his level best to represent the interests of justice that any defendant would be wanting to advance in a case like this.

The court appointed Robert Reid as amicus counsel and ordered him "to advocate, as an attorney independent of both the prosecution and Mr. Kowalczyk, the position of competency that Mr. Kowalczyk has advised the Court he intends to pursue in his pro se capacity."

On February 4, 2014, Kowalczyk moved pro se for appointment of counsel for the competency hearing, which the government opposed. The court denied the motion and stated:

> By his own actions, defendant has made appointing him a lawyer impossible and repeatedly demonstrated his intention to use such appointments as a tactical delay. For him to now complain that he cannot proceed without counsel is like Penelope complaining that her tapestry is not finished.

The district court began competency proceedings on April 10 and 11, 2014. On April 10, the government called and examined one witness, Dr. DeMier, who was subsequently cross-examined by both Reid as amicus counsel and Kowalczyk acting pro se. At the conclusion of testimony that day, the court asked the parties which witnesses they would be presenting the next day. Both Kowalczyk and amicus counsel Reid separately offered the names of witnesses, but neither Kowalczyk nor Reid asked to have Kowalczyk testify on his own behalf. On April 11, Kowalczyk released his two witnesses without questioning them and, upon his request, was escorted out to a remote viewing room when Reid called Kowalczyk's mother as a witness. After Kowalczyk returned, Reid called and examined Kowalczyk's father and Dr. True, both of whom Kowalczyk cross-examined. The court then concluded taking of evidence in the case. In all respects, Kowalczyk fully participated in both days of the competency proceedings, often being allowed by the court to speak out of turn.

The district court also determined that Reid did a "truly masterful job" representing Kowalczyk's interests over the two days, both by cross-examining the government expert, Dr. DeMier, and by calling Kowalczyk's parents and Dr. True as friendly witnesses.

Dr. DeMier, the evaluating doctor from FMC Springfield, testified that Kowalczyk seemed "very invested in convincing me that he was mentally ill," which is uncommon for people who are actually mentally ill and is more common in those who are malingering. Dr. DeMier did not administer any psychological tests because he believed that they would not be accurate due to Kowalczyk's knowledge of the purpose of

the tests. Dr. DeMier testified that he believed Kowalczyk was malingering and that he was competent to stand trial.

Dr. True, the defense expert, testified that Kowalczyk suffered from paranoid schizophrenia with a pattern of delusional disorder, a diagnosis similar to his first assessment of Kowalczyk where he found that Kowalczyk had Delusional Disorder, paranoid type. Dr. True testified that Kowalczyk's mental illness affects his competency because it impacts his ability to work with attorneys and may lead him to fire them. Dr. True also emphasized the importance of using objective tests during psychological examinations.

The court found that while Kowalczyk clearly understood the proceedings against him and was therefore competent on that factor, it was unclear whether Kowalczyk was incompetent on the second competency factor—his ability to work with attorneys—and requested supplemental briefing on that issue from the parties. The district court specifically asked for briefing on whether: (1) "Dr. DeMier's methodology [was] so flawed as to make his conclusion of competence unreliable," (2) there is "solid evidence" to support a finding that Kowalczyk was suffering from delusions and paranoia, and (3) there is evidence that the trouble with Kowalczyk's attorneys was caused by his paranoia and delusions. Amicus counsel Reid filed a 69-page supplemental brief in response to the district court's request for further briefing on the issue of whether Kowalczyk was competent to work with his attorneys. The government and Kowalczyk also filed supplemental briefs, arguing respectively for competency and incompetency.

On July 23, 2014, the district court held a hearing after the supplemental briefings. After the government and amicus

counsel argued the issues, Kowalczyk requested to speak. The court initially denied his request, instead ruling that it found "a better-than-average chance" that Kowalczyk was "merely malingering." However, the court also found that Dr. DeMier's competency evaluation and finding of competence was inadequate, as was the incompetency finding by Dr. True. Thus, the court decided to send Kowalczyk for "renewed evaluation" by someone other than Dr. DeMier and directed that the evaluation include a "thorough review of the record in this case."

After ruling, the court allowed Kowalczyk to speak. Kowalczyk informed the court that he did not wish to return to FMC Springfield. The court granted his request and suggested that he be sent to a different facility.

On September 2, 2014, the district court ordered that Kowalczyk be committed to the custody of the Attorney General "who shall hospitalize defendant for evaluation and treatment" for not more than four months "to determine whether there is a substantial probability that in the foreseeable future defendant will attain the capacity to permit the proceedings to go forward." If the evaluator determined Kowalczyk was malingering and was competent, the evaluator is required to issue a report to the court. If the evaluator determined Kowalczyk had regained competency then he or she is ordered to file a certificate with the court. Finally, the court determined that if, at the end of the four month period, Kowalczyk remained incompetent, a hearing would be held to address further proceedings under 18 U.S.C. §§ 4246 and 4248.

Kowalczyk appealed the district court's order. Kowalczyk also sought the appointment of counsel. Our court appointed

Chief Deputy Federal Public Defender Steve Sady to represent Kowalczyk in his appeal. Kowalczyk filed an emergency motion in this court to stay the district court's commitment and treatment order. That motion was granted without prejudice; the order stated:

> All proceedings under 18 U.S.C. § 4241(d) are stayed pending this appeal. This order is without prejudice to the district court's entry of a new order for psychiatric or psychological examination of appellant and the preparation of a psychiatric or psychological report to be filed with the court pursuant to 18 U.S.C. § 4241(b). However, no use of the transcripts or other records of appellant's prior competency hearings shall be made in any examination or evaluation of appellant pending this appeal.

The district court has declined to order a new evaluation.

## JURISDICTION

We have jurisdiction to review the district court's commitment order under 28 U.S.C. § 1291 because pretrial commitment orders are final decisions under the collateral order doctrine. *United States v. Friedman*, 366 F.3d 975, 979–80 (9th Cir. 2004).[2]

---

[2] We do not address Kowalczyk's argument that the district court violated his Sixth Amendment rights and attorney–client privilege, by questioning his attorneys regarding their opinion as to his competency and opening sealed proceedings that allowed the prosecution access to privileged information and trial strategy detrimental to his case. Because

## DISCUSSION

### I.   Sixth Amendment Right to Counsel

Our court reviews Sixth Amendment claims and the waiver of the right to counsel de novo. *United States v. Danielson*, 325 F.3d 1054, 1066 (9th Cir. 2003); *United States v. Gerritsen*, 571 F.3d 1001, 1006 (9th Cir. 2009). We also review the interpretation of statutes de novo. *United States v. Thompson*, 728 F.3d 1011, 1015 (9th Cir. 2013).

### A.   Counsel is Required During Competency Proceedings

The Sixth Amendment guarantees the waivable right to counsel at all critical stages of criminal proceedings, including during competency proceedings. *United States v. Hamilton*, 391 F.3d 1066, 1070 (9th Cir. 2004) (noting that "court-ordered psychiatric examinations to determine

---

the extent of such harm will be sufficiently protected by post-judgment appeals, our jurisdiction to hear this claim is limited by the collateral order doctrine. *See United States v. Guerrero*, 693 F.3d 990, 997 (9th Cir. 2012) (noting that "decisions adverse to the attorney–client privilege, as a class, are not effectively unreviewable on appeal of a final judgment, and therefore not subject to collateral order review" (citing *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 108–09 (2009))). Nonetheless, we note that government intrusion into the attorney–client relationship is not per se violative of the Sixth Amendment unless the defendant is substantially prejudiced by such actions. *United States v. Irwin*, 612 F.2d 1182, 1186–87 (9th Cir. 1980). Substantial prejudice results, for example, from "the prosecution's use of confidential information pertaining to defense plans and strategy, and from other actions designed to give the prosecution an unfair advantage at trial." *Id.* at 1187; *see also United States v. Danielson*, 325 F.3d 1054, 1069–70 (9th Cir. 2003). Here, the trial is yet to begin. The prosecution has yet to use any such information at trial in a prejudicial way.

competency to stand trial and future dangerousness" constitute a critical stage). At a competency hearing to determine whether an individual is competent to stand trial, "the person whose mental condition is the subject of the hearing *shall be represented by counsel* and, if he is financially unable to obtain adequate representation, counsel shall be appointed for him." 18 U.S.C. § 4247(d) (emphasis added). "The word 'shall' is ordinarily the language of command." *Alabama v. Bozeman*, 533 U.S. 146, 153 (2001) (internal quotation marks omitted).

Kowalczyk argues that § 4247 creates a non-waivable right to counsel during competency proceedings and argues that otherwise the statute would be superfluous because the Sixth Amendment already guarantees the waivable right to counsel. Kowalczyk notes that "courts should avoid interpreting a statute in a way that renders a provision meaningless." *Los Coyotes Band of Cahuilla & Cupeno Indians v. Jewell*, 729 F.3d 1025, 1036 (9th Cir. 2013) (citing *Gorospe v. C.I.R.*, 451 F.3d 966, 970 (9th Cir. 2006)). While our court has yet to decide whether § 4247 creates a non-waivable right to counsel, several other circuits have held that a defendant whose competence to stand trial is in question cannot legally waive his or her right to counsel. *See United States v. Ross*, 703 F.3d 856, 871 (6th Cir. 2012) ("[T]he Constitution requires a defendant to be represented by counsel at his own competency hearing, even if he has previously made a knowing and voluntary waiver of counsel."); *United States v. Klat*, 156 F.3d 1258, 1263 (D.C. Cir. 1998) ("[W]here a defendant's competence to stand trial is reasonably in question, a court may not allow that defendant to waive her right to counsel and proceed *pro se* until the issue of competency has been resolved."); *United States v. Purnett*, 910 F.2d 51, 55 (2d Cir. 1990) ("[T]he trial

court cannot simultaneously question a defendant's mental competence to stand trial and at one and the same time be convinced that the defendant has knowingly and intelligently waived his right to counsel.").

Reading § 4247 as creating a non-waivable right to counsel during competency proceedings is consistent with the Supreme Court's holding in *Pate v. Robinson*, 383 U.S. 375 (1966). There, the Court held that "it is contradictory to argue that a defendant may be incompetent [to stand trial], and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial." *Id.* at 384. This same reasoning applies to a potentially incompetent defendant's inability to knowingly or intelligently waive his right to counsel. Thus, we hold that, as a person whose competence to stand trial was in question, Kowalczyk could not legally waive his right to counsel; thus he was entitled to be represented by an attorney at his competency hearing.

Further, "the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial under *Dusky* [*v. United States*, 362 U.S. 402 (1960),] but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." *Indiana v. Edwards*, 554 U.S. 164, 178 (2008). Essentially, the standard of competence for waiving counsel and invoking the right to self-representation may be higher than the standard of competence required to stand trial. *See United States v. Thompson*, 587 F.3d 1165, 1172 (9th Cir. 2009) (holding that judges may "require a higher level of competence for self-representation"). Thus, if states can require a competent, but mentally ill, defendant to have counsel, then surely Congress through § 4247(d) has the authority to require representation by counsel for a defendant

whose competency is in question during competency proceedings.

The government argues that in limited circumstances a judge may force a defendant to proceed pro se if his or her conduct "hinders the efficient administration of justice." In *United States v. Sutcliffe*, our court determined "that the district court did not err in finding that Defendant knowingly and intelligently waived his right to counsel through his conduct." 505 F.3d 944, 956 (9th Cir. 2007). However, unlike Kowalczyk, the competence of the defendant in *Sutcliffe* was no longer in question; he was in a position where he could knowingly and intelligently waive his right to counsel.[3]

Kowalczyk's situation is more comparable to that of the defendant in *United States v. Meeks*, 987 F.2d 575 (9th Cir. 1993). Similar to Kowalczyk, Meeks's "attempts to change attorneys delayed his trial several times" and our court noted the district court's understandable frustration. *Id.* at 579. Our court found that Meeks's history of mental illness precluded a finding of a "knowing, intelligent waiver." *Id.* Though Meeks was actually found competent to stand trial following competency proceedings, his history of mental illness alone convinced our court that he was *unable to impliedly waive* his right to counsel at trial through his conduct. *Id.* at 577–79. Our court "indulge[s] every reasonable presumption against waiver of fundamental constitutional rights, and doubts must be resolved in favor of no waiver." *Id.* at 579 (internal quotation marks omitted). Here, Kowalczyk, who also had a history of mental illness and was found incompetent to stand

---

[3] *See Sutcliffe*, 505 F.3d at 952, 956 (competency proceedings must have resulted in a finding of competence because Sutcliffe's case proceeded to trial).

trial during his first competency hearing, was just as incapable as Meeks of knowingly and intelligently waiving his right to counsel through his conduct.

Accordingly, the district court was required to provide Kowalczyk with an attorney during his competency proceedings. We thus must consider whether the district court's appointment of amicus counsel satisfied this requirement of the right to counsel.

### B. The Meaningful Adversarial Testing Standard is Applicable

"[A]ppointed counsel must function in the active role of an advocate, as opposed to that of amicus curiae." *Entsminger v. Iowa*, 386 U.S. 748, 751 (1967). The government argues that the district court's appointment of amicus counsel fulfilled Kowalczyk's right to counsel at his competency hearing because amicus counsel acted as if he were defense counsel. We agree.

We follow the Sixth Circuit and apply the "meaningful adversarial testing" standard of *United States v. Cronic*, 466 U.S. 648, 656 (1984). *Ross*, 703 F.3d at 872. Under *Cronic*, counsel must "subject the prosecution's case to meaningful adversarial testing" in order to satisfy the Sixth Amendment's guarantee of the effective assistance of counsel. *Cronic*, 466 U.S. at 659. We agree with the Sixth Circuit that *Cronic*'s "meaningful adversarial testing" standard "is the appropriate standard for assessing whether [a defendant's] standby counsel provided representation that was adequate to overcome [the defendant's] claim that he was deprived of counsel at his competency hearing." *Ross*, 703 F.3d at 872.

Without mentioning *Cronic* or the "meaningful adversarial test" by name, the Eighth and Second Circuits follow a similar approach to determine whether a defendant was deprived of his right to counsel during competency proceedings. *See Wise v. Bowersox*, 136 F.3d 1197, 1203 (8th Cir. 1998) (finding no deprivation of due process, where prosecution's arguments for competency to stand trial were challenged by standby counsel's arguments for incompetency); *Purnett*, 910 F.2d at 55–56 (2d Cir. 1990) (holding that standby counsel was not an adequate replacement for defense counsel during competency proceedings, where the record showed that standby counsel did not focus on his client's competency and did not review the client's psychiatric report).

Here, Kowalczyk's amicus counsel, Reid, provided "meaningful adversarial testing." Reid advocated for the same incompetency position as Kowalczyk. Reid also filed a 69-page supplemental brief, and thoroughly litigated Kowalczyk's interests, both by cross-examining the government expert, Dr. DeMier, and by calling Kowalczyk's parents and Dr. True as friendly witnesses. The district court determined that Reid did a "truly masterful job" representing Kowalczyk's interests.

Because amicus counsel provided "meaningful adversarial testing," we hold that Kowalczyk "was sufficiently represented by counsel at the competency hearing to overcome his denial of counsel claim." *Ross*, 703 F.3d at 873.

## II. Right to Testify During Competency Hearing

We review "*de novo* a defendant's claim that he was deprived of his constitutional right to testify." *United States v. Gillenwater*, 717 F.3d 1070, 1076 (9th Cir. 2013).

"[A] defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." *Id.* at 1077 (internal quotation marks omitted). The same right applies in a competency hearing, a "critical stage" in the adversarial process. *Id.* at 1077 n.5. A defendant's right to testify is personal and therefore may be relinquished only by the defendant. *Id.* at 1079. Additionally, the "relinquishment of the right [to testify] must be knowing and intentional." *Id.* (internal quotation marks omitted). "[W]aiver of the right to testify may be inferred from the defendant's conduct and is presumed from the defendant's failure to testify or notify the court of his desire to do so." *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993).

The appellant argues that his right to testify during his competency proceeding was violated when the court did not allow him to speak during the July 23, 2014 hearing after supplemental briefing. We disagree. The July 23 hearing after supplemental briefing must be viewed in context of the two-day evidentiary hearing which preceded it on April 10 and 11, 2014. On both days of this earlier hearing, Kowalczyk was an active participant in the calling and examining of witnesses and had ample opportunity to testify himself.

In *Gillenwater*, our court found that the district court had denied the defendant's right to testify. 717 F.3d at 1073–75. The defendant had expressed his desire to testify during his competency hearing, against the advice of his attorney. *Id.*

This led to the defendant's disruptive outburst, removal from the courtroom by the court, and denial of the defendant's right to testify. *Id.* On appeal, our court vacated and remanded for a new competency hearing based on the district court's denial of the defendant's right to testify. *Id.* at 1085.

Unlike the defendant in *Gillenwater*, Kowalczyk actively participated in his competency hearing as a pro se defendant and was given the opportunity to testify. On April 10, 2014, the first day of the evidentiary hearing, Kowalczyk cross-examined the government's witness. At the conclusion of the first day, the court asked all parties what evidence they wanted to present the next day. At that time, Kowalczyk and amicus counsel Reid named witnesses to be called the next day, but neither asked to call Kowalczyk to testify. On April 11, 2014 Kowalczyk dismissed his two witnesses without questioning but cross-examined witnesses called by Reid.

Initially, the court denied Kowalczyk's request to speak during the July 23 hearing. However, the record is not clear that Kowalczyk was requesting to testify. Instead, he may have been asking to argue, as other counsel had been permitted to do. The record does show that the time to provide testimony had passed. The court had concluded the taking of evidence in the case on April 11 and called for supplemental briefing to focus on key legal issues in another hearing. Thus, we cannot agree with Kowalczyk that he was denied his constitutional right to testify in his competency hearings.

Nor do we believe the court abused its discretion by initially refusing Kowalczyk's request to speak during the July 23 hearing. As the court in *Gillenwater* noted, "[N]othing in our decision prevents the district court from

exercising discretion to limit testimony, focus the scope of the proceeding, or exclude irrelevant testimony." *Id.* at 1079. Nevertheless, at the conclusion of the July hearing, Kowalczyk was given the opportunity to tell the court of his wish not to return to FMC Springfield. Moreover, the district court ultimately decided the competency proceedings in Kowalczyk's favor by finding him incompetent and ordering that he be committed to another medical center. Thus, any potential abuse of discretion, in not allowing Kowalczyk to speak at the July 23 hearing on supplemental briefing, was harmless.

## III.     No Clear Procedural Violations Under 18 U.S.C. § 4241

Kowalczyk argues that the district court violated the proper process for competency proceedings laid out in 18 U.S.C. § 4241, when, after finding Kowalczyk incompetent for the first time and referring him for treatment, the district court held a second competency hearing and ordered him committed and treated a second time. We disagree.

Section 4241 is "a comprehensive provision detailing the standards and procedures for finding an individual mentally incompetent." *United States v. White*, 887 F.2d 705, 707 (6th Cir. 1989). The Sixth Circuit has found that § 4241 "in no way limits the court to a single inquiry into a defendant's competency." *Id.* at 709. As the Seventh Circuit has noted, the issue of a defendant's competency "can hardly be considered final when the very objective of competency determinations is to discover whether or when a defendant will be competent to stand trial." *United States v. Sherman*, 912 F.2d 907, 909 (7th Cir. 1990).

Because multiple competency evaluations and determinations are permitted by § 4241, there is no process error that would invalidate Kowalczyk's commitment order.

## IV.    Remand to the Same District Court Judge

Kowalczyk argues that reassignment to a different district court judge is necessary. In deciding whether remand to a new judge is appropriate, this court considers:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*United States v. Atondo-Santos*, 385 F.3d 1199, 1201 (9th Cir. 2004). Kowalczyk argues, relying on the second factor, that remand to the same judge would lead to the appearance of unfairness. We disagree.

We reserve reassignment for "rare and extraordinary circumstances," *Krechman v. Cnty. of Riverside*, 723 F.3d 1104, 1112 (9th Cir. 2013), which we find absent in this instance. The district court judge has taken extraordinary measures across the lengthy duration of this case to treat Kowalczyk fairly. In deciding Kowalczyk's competency to stand trial, for example, the district court judge took into

careful consideration Kowalczyk's own and the government's psychological reports. Based on this evidence—and despite the district court's concerns that Kowalczyk was malingering—the judge ultimately found Kowalczyk incompetent to stand trial and ordered him transferred to FMC Springfield.

Considerations of judicial efficiency further counsel against reassignment. Given the lengthy procedural history of this case, remanding the case to a different judge would entail waste and duplication disproportionate to any appearance of unfairness that may exist in this case. Indeed, the record does not indicate that this case constitutes one of those "rare occasions [where] . . ., both for the judge's sake and the appearance of justice," assignment to a different judge is warranted. *United States v. Sears, Roebuck & Co.*, 785 F.2d 777, 780 (9th Cir. 1986).

We see no reason here to reassign this case to a different district court judge on remand.

## CONCLUSION

First, Kowalczyk had a non-waivable right to have counsel during his competency proceedings. Amicus counsel masterfully fulfilled that role by providing "meaningful adversarial testing" of the prosecution's case. Second, given our review of Kowalczyk's competency proceedings, he was not denied the right to testify. Any potential abuse of discretion, in not allowing Kowalczyk to speak at the July 23 hearing on supplemental briefing, was harmless. The bottom line is that Kowalczyk got what he wanted: the court found him incompetent to stand trial and ordered that he be treated at a federal medical facility. We remand to the district court

for further proceedings consistent with the views herein expressed.

**AFFIRMED AND REMANDED.**